UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAY ALLEN PROPST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-CV-00027 (CEJ) |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

## I. **Procedural History**

On November 12, 2008, plaintiff Ray Allen Propst filed applications for a period of disability and disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et. seq.*, (Tr. 106-112), and for supplemental security income (SSI), Title XVI, 42 U.S.C. §§ 1381 *et seq*., with an alleged onset date of March 17, 2008. (Tr. 102-105). After plaintiff's application was denied on initial consideration (Tr. 61-65), he requested a hearing from an Administrative Law Judge (ALJ). See Tr. 66-67

Plaintiff and counsel appeared for a hearing on June 8, 2010 (Tr. 19-55). The ALJ issued a decision on October 18, 2010 denying plaintiff's application[1] (Tr. 4-15), and the Appeals Council denied plaintiff's request for review on December 29, 2011. (Tr. 1-3). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

---

[1] The ALJ used an onset date of October 31, 2007, instead of March 17, 2008. In the decision, the ALJ noted that the plaintiff filed a prior Title II application on October 31, 2008 alleging an onset date of October 31, 2007. The plaintiff and his attorney could not clarify at the hearing which alleged onset date was correct. As such, the ALJ incorporated the earlier date of October 31, 2007.

## II. Evidence Before the ALJ

### A. Disability Application Documents

In his Disability Report (Tr. 156-163), plaintiff listed his disabling conditions as asthma and an injured right arm and hand. He stated that he experiences burning, numbness, and shortness of breath and has difficulty gripping items. Plaintiff listed past employment as a trap checker for a boll weevil eradication company, a clean up man, a farm hand, a laborer for a construction company, and a line worker at a factory.

In his Function Report (Tr. 176-186), plaintiff stated that his daily activities include making coffee, doing "little things around the house" including washing clothes and dishes, and going "to town" or visiting with friends. Once a week he goes to an auction for two to three hours and to the grocery store. He indicated that his injuries prevent him from lifting heavy items in his yard, changing the tires on his truck, and chopping wood. He stated that the pain and numbness in his elbow and hand negatively affects his sleep, but that he is still able to do laundry, clean, cook, perform small repairs, and drive. He reports that he is able to pay bills, count change, and handle a savings or checking account. His hobbies include "riding a four wheeler, playing catch, and watching T.V.," but indicated that riding his four-wheeler creates pain in his arm after thirty minutes. He reported that he is not good at handling stress or changes in routine and that he is limited in the weight he can lift and the time he can spend standing, sitting, using his hands, reaching, and concentrating.

### B. Hearing on June 8, 2010

At the time of the hearing, plaintiff was 47 years old, had been separated from his wife for eight years, and lived in a house with his son, age 21, and his daughter, age 19. (Tr. 25-26). Plaintiff had a third son who passed away in a car accident approximately two months prior to the hearing. (Tr. 26). Plaintiff is a high school graduate. (Tr. 25).

Apart from food stamps, plaintiff testified that he does not receive any steady income and supports himself through "odd jobs here and there," which consist of supervising his children while they pick up wood or scrap metal. (Tr. 26-28, 40). Plaintiff testified that in the fifteen years prior to the hearing, his work history consisted of delivering greenhouses, breaking down tires, packing toilet paper and paper towel products, farming, cleaning a park, soldering, carpentry, and sanding rust off electrical boxes. (Tr. 28-33).

Plaintiff is 5 feet 6 inches tall and, at the time of the hearing, weighed 340 pounds. (Tr. 27, 36). He testified that 340 pounds was not his normal weight, but also stated that he had been at that weight "for a while." (Tr. 27). Plaintiff is left handed. He testified that the pain in his right arm and left shoulder and the pinched nerve in his neck prevents him from being able to work. (Tr. 35-36). He also complained of lower back pain that he attributed to excessive sitting and not working. (Tr. 43). Plaintiff testified to taking Cyclobenzapr[2] and Flexeril[3] for the pain. (Tr. 36-37). He also testified to suffering from persistent migraines. (Tr. 39).

---

[2] Cyclobenzaprine is a skeletal muscle relaxant which relieves muscle spasm of local origin without interfering with muscle function. See Phys. Desk Ref. 1481 (64th ed. 2010).

[3] Flexeril is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute musculoskeletal conditions. See Phys. Desk Ref. 1832-33 (60th ed. 2006).

Plaintiff stated that he can lift 20 pounds for no longer than four to five minutes, (Tr. 37), that he is unable to stay awake all day, and that he suffers from depression. (Tr. 40, 42). He testified to being able to bend down and pick up items off the ground, although lifting any item over three pounds bothers him. (Tr. 40-41). He does not have any trouble reading or writing. (Tr. 41). Prior to the injury plaintiff had numerous jobs and was able to maintain employment. (Tr. 42-43).

Gary Weimholt, a vocational expert, provided testimony regarding plaintiff's past work and current employment opportunities. (Tr. 45-54). The ALJ questioned the expert about the employment opportunities for an individual under the age of 50, with plaintiff's education, training and work experience, with the ability to perform light work which involves lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing and walking a total of six hours in eight or sitting a total of six hours in eight, who must avoid climbing ladders, ropes, scaffolds, stairs and ramps, with occasional balancing, stooping, kneeling, crouching, and crawling. Additionally, the ALJ asked about opportunities at the Specific Vocational Preparation (SVP) level of 3 or less with occasional reaching with both arms and tasks that would require reading, spelling or math at the sixth grade level or below.[4]

Mr. Weimholt opined that such an individual would be able to perform plaintiff's past relevant work as a solderer, a cable assembler, a cleaner, and a delivery driver, but not any construction work. (Tr. 50). He also testified that the soldering position

---

[4] The SVP level listed for each occupation in the Dictionary of Occupational Tititles (DOT) connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. Hulsey v. Astrue, 622 F.3d 917, 923 (8th Cir. 2010). At SVP level 2, an occupation requires more than a short demonstration but not more than one month of vocational preparation; level 3 covers occupations that require over 30 days and up to and including 3 months. 20 C.F.R. § 656.3.

has a SVP level of 3 (of which there are 1,500 jobs within the state of Missouri) and the cleaner position has a SVP of 2 (of which there are 6,500 jobs within the state of Missouri).

### C. Medical Evidence

From 2003 to 2007, plaintiff sought treatment at the Cape Family Practice facility for a variety of ailments, including right leg and foot pain, kidney pain, low back pain, neck pain, cough, stress, chest pressure, frequent urination, fatigue, shortness of breath, right shoulder and arm pain, numbness in hands, and cellulitis. (Tr. 212-220, 269-317). In 2005-2006, plaintiff sought treatment from Sleep Analysts, Inc. for asthma and was prescribed Advair, Combivent, and Spireva Handihaler. (Tr. 326, 328, 330).

On October 18, 2006, an x-ray of plaintiff's cervical spine was performed. According to Mike Brown, M.D., no injury to plaintiff's neck was found and the study was within normal limits. (Tr. 319). On February 28, 2007, an MRI of plaintiff's right elbow was performed in order to investigate complaints of right arm pain from an alleged work injury. (Tr. 323). The treatment notes from Cape Family Practice diagnosed plaintiff with a biceps strain. (Tr. 270). Mark Howshar, M.D., reported that the MRI impression was negative for any internal derangement, fracture, or other bony abnormality in the right elbow. (Tr. 323). On May 24, 2007, a chest x-ray was performed, in which cardiac size was found to be normal, lungs were found to be well expanded, and no pulmonary infiltrates or nodules were apparent. (Tr. 321). A second x-ray of plaintiff's cervical spine was completed on June 2, 2010, which found minimal narrowing at C4-5 and a slightly increased posterior osteophyte at C3-4 with the remainder of the cervical spine within normal limits. (Tr. 351). On June 23, 2010, an

MRI of plaintiff's cervical spine revealed no abnormalities. (Tr. 360). On June 25, 2010, Daryl A. Green, M.D., reported that plaintiff's head and neck possessed normal alignment and mobility and that both right and left extremities were of normal range of motion and strength and no joint enlargement, with only the left shoulder experiencing tenderness. (Tr. 348). The medical records reflect that surgery was not recommended and that plaintiff was prescribed non-narcotic muscle relaxants to treat the complaints of pain. (Tr. 355).

Plaintiff underwent cognitive testing on September 3, 2008. Stephen Jordan, Ph.D, reported that plaintiff "exhibited intact attentional capacity," "fluent speech," and was "pleasant and cooperative." (Tr. 225-26). On December 29, 2008, Keith L. Allen, Ph.D., completed a psychiatric review of plaintiff. (Tr. 255-265). His report indicated that plaintiff did not have mental disorders that would restrict his activities of daily living or social function. However, Dr. Allen noted that plaintiff possessed mild difficulties in maintaining concentration, persistence, or pace. (Tr. 263). On August 14, 2009, Ben Lanpher, Ph.D., completed a second psychiatric evaluation of plaintiff. (Tr. 266-268). In his report, he perceived plaintiff as being "moderately impaired in his ability to understand and remember instructions . . . [and] in his ability to sustain concentration . . . moderately to markedly impaired in his ability to interact socially and adapt to his environment . . . [and] "capable of handing his finances, with considerable assistance." (Tr. 268). As of June 25, 2010, plaintiff took Xanax for depression and Vistaril for anxiety, but the record does not reflect that plaintiff had ever sought inpatient treatment regarding his mental health. (Tr. 359).

### III. The ALJ's Decision

In the decision issued on October 18, 2010, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2011.

2. Plaintiff has not engaged in substantial gainful activity since October 31, 2007, the earliest alleged onset date.

3. Plaintiff has the following severe combination of impairments: right biceps strain, mild degenerative disc disease of the cervical spine, obesity, borderline to low average intellectual functioning, depression, and anxiety. Plaintiff's obstructive pulmonary disease appears nonsevere.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), meaning he can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk a total of about 6 hours in 8, and sit a total of about 6 hours in 8, except he can only occasionally balance, stoop, kneel, crouch, crawl, climb stairs/ramps, or lift overhead. Plaintiff cannot climb ladders, ropes, or scaffolds. Plaintiff can perform only simple and routine tasks with a DOT SVP of 3 or less and can only occasionally perform tasks requiring reading, spelling and math at a 6th grade or lower level.

6. Plaintiff is capable of performing past relevant work as a cable solderer/solder machine tender. He also can perform past relevant work as a cleaner and driver as actually performed. This work does not require the performance of work related activities precluded by plaintiff's residual functional capacity. Plaintiff cannot perform past work as a farm laborer, hand packager, carpenter/construction worker, and machine operator.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2007, through the date of this decision.

(Tr. 7-15).

## IV. **Legal Standards**

The Court must affirm the Commissioner's decision "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so

that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quotations and citation omitted).

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). "Each step in the disability determination entails a separate analysis and legal standard." Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006).

Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Id.

"Prior to step four, the ALJ must assess the claimant's [RFC], which is the most a claimant can do despite [his] limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an

-8-

individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation and citation omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002). This evaluation requires that the ALJ consider "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation and citation omitted). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" Id. (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)). After considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ finds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). See also 20 C.F.R. § 404.1520(f).

If the claimant is prevented by his impairment from doing any other work, the ALJ will find the claimant to be disabled.

## V. Discussion

Plaintiff contends that the ALJ erred by not considering the combined effect of plaintiff's medical and mental impairments on his capacity to work and by applying an improper standard to assess the pain suffered by plaintiff. (Doc. #13).

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotations, alteration and citations omitted). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." Id. (citation omitted). "However, the burden of persuasion to prove disability and demonstrate RFC

-10-

remains on the claimant." Id. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)). However, in assessing the effects of mental and physical impairments, the impairments must be considered in combination and not merely in isolation. Mapes v. Charter, 82 F. 3d 259, 264 (8th Cir. 1996).

The ALJ's opinion contains a thorough discussion and collective evaluation of plaintiff's physical and mental impairments and complaints of pain. The Eighth Circuit has held that an ALJ properly considers the combined effects of a claimant's impairments when the ALJ separately discusses each impairment and still concludes that the claimant does not have a combination of impairments that render him disabled. Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011). The ALJ's opinion discusses plaintiff's educational history, IQ scores, psychological examinations, history of depression and anxiety, treatment notes regarding complaints of pain, MRI and x-results, prescription history for pain, depression, and anxiety, and the impact that his son's death has on his mental state. (Tr. 14). The ALJ further considers plaintiff's ability to perform simple tasks at home, including caring for his two children and managing household finances. (Tr. 10-13). Accordingly, the ALJ's determination that plaintiff was "not disabled" was appropriately decided by evaluating all impairments in combination and not in isolation.

Further, the ALJ properly evaluated plaintiff's pain. Evidence and severity of pain is subjective in nature and, as such, an ALJ is required to evaluate more than objective medical evidence in order to evaluate whether the alleged symptoms negatively affects the claimant's ability to work. Halpin v. Shalala, 999 F.2d 342, 346 (8th Cir. 1993). In

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit articulated five factors for evaluating pain and other subjective complaints: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions." The determination of a plaintiff's credibility is for the Commissioner, and not the Court, to make. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). Although the ALJ may not discount subjective complaints on the sole basis of personal observation, the ALJ may disbelieve a claimant's complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. "The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting [a claimant's] subjective complaints." Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011).

In the present case, plaintiff testified that he suffered from a right arm injury with arm and elbow pain, a pinched nerve in the neck with pain extending to his left shoulder, chronic headaches, and low back pain. He testified that he could not lift more than 20 pounds and experiences pain when lifting 3 to 4 pounds or while doing any overhead lifting.

The ALJ noted that none of plaintiff's doctors who evaluated his alleged injuries had reported that plaintiff was under a continuous disability or was unable to work 12 full months or more. The ALJ acknowledged that treatment was "spotty" in that plaintiff did not receive regular follow up treatments for pain complaints and objective diagnostic tests did not confirm any etiology for his right arm complaints, which suggested that his biceps strain healed and did not persist. (Tr. 13). The ALJ noted that the 2006 x-ray of the cervical spine was negative, while the 2010 exam revealed only

minimal C4-5 narrowing and slightly increased C3-4 osteophyte formation with the remainder of the cervical spine stable and within normal limits, and that the 2010 MRI of the cervical spine was negative. The ALJ further referenced the 2010 medical records, which indicated that plaintiff had normal range of motion and strength in the right arm with no joint enlargement, and that he was prescribed muscle relaxants as opposed to higher strength narcotic pain medication. The ALJ further noted that plaintiff lived in his own home with his two children and that he was able to care for his personal, household and family needs despite his allegations of disabling pain and symptoms. (Tr. 12). The ALJ noted that plaintiff had a steady work history, but had a worker's compensation claim pending that could conflict with his desire to return to work at present. (Tr. 13).

After reviewing the ALJ's opinion, the Court finds that the ALJ thoroughly considered plaintiff's subjective complaints on the basis of the entire record before him, appropriately set out the inconsistencies which detracted from plaintiff's credibility, and considered the Polanski factors before discounting plaintiff's complaints of pain. Accordingly, the ALJ applied the proper standard when assessing plaintiff's pain suffered by his alleged disabilities.

## VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [Doc. #13] is **denied**.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2012.